UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| SHANNON BECKHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 978 |
| | ) |
| CHAD STILES, STEVEN J. HANZIL, | ) |
| and DOUGLAS R. MARX, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

### I. BACKGROUND

After two-and-a-half years of litigation and a mistrial due to the illness of defense counsel, this case proceeded to a full trial on the merits on August 10, 2009. Four days later, the jury deliberated and returned a special verdict finding that no excessive force was used by the defendant police officers against plaintiff Shannon Beckham in the process of arresting him outside of a nightclub in Milwaukee, Wisconsin. Plaintiff has now moved for a new trial (Pl.'s Mot., DE # 103), and defendants have responded (Def.'s Resp., DE # 107). Specifically, plaintiff contends that the court erred by: (1) excluding evidence regarding events occurring after the alleged use of excessive force; (2) excluding the testimony of plaintiff's police practices expert; and (3) failing to instruct the jury that the State of Wisconsin would indemnify the defendant-officers for any and all damages the jury might award. For the reasons set forth below, the motion is denied.

## II. DISCUSSION

### A. *Post-Incident Evidence*

Plaintiff argues that the court erred in excluding three types of post-incident evidence: (1) a video showing plaintiff and bystander Kim Junior handcuffed; (2) Junior's testimony regarding her experience with the police after the incident between the police and plaintiff had concluded; and (3) the testimony of another bystander, Stephanie Powell, regarding her observations of the scene after the incident. (Pl.'s Mot. 2.) FEDERAL RULE OF CIVIL PROCEDURE 61 states that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Thus, this court should grant a new trial only if the error in the exclusion of this evidence had a substantial influence over the jury and the result reached was inconsistent with substantial justice. *Agushi v. Duerr,* 196 F.3d 754, 759 (7th Cir. 1999).

At trial, the court reviewed the proposed video evidence submitted by plaintiff in chambers and outside of the presence of the jury. The video consisted of approximately five minutes of footage that included both visual and audio components. Plaintiff edited the proposed video evidence into two distinct parts, which the court addresses separately below as Part I and Part II.

Part I of the proposed video evidence depicts plaintiff in handcuffs after the alleged use of force had concluded. Plaintiff is seen first seated and then later standing

2

and cannot be heard speaking. Numerous squad cars with their lights flashing are visible. Several unidentified individuals can be heard making comments in the background, though they cannot be seen. A female speaker is heard stating that the police "beat the shit" out of plaintiff for no reason, that the police pulled plaintiff out of the bar, and that "the dude" was drunk. The female speaker also verbally indicates which officers she believed were involved in the incident, though from the footage it is not clear precisely to whom she is referring. A male speaker and a female speaker relate how the police said that plaintiff had a gun, but that plaintiff did not actually have a gun. The male speaker then describes how plaintiff called the officers "cocksuckers" and the cops said "come here." The male and female speakers state that they saw the officers beat plaintiff while they watched through the window of the club. While the camera is trained on the officers and plaintiff, the male speaker comments that the police are trying to plea bargain with plaintiff. At one point, several unidentified individuals briefly discuss the videographer's efforts to catch situations like this one on tape.

      The second part of the video shows a female, identified by plaintiff's counsel as bystander Kim Junior, in handcuffs. Several unidentified officers appear in the video, one of which informs Junior that she is in handcuffs because another officer told everyone looking out of the window of the club to assist with the scuffle involving plaintiff, but Junior did not cooperate. Junior states that she is a woman and does not know how she was supposed to help. An officer states that he will confiscate the video

being filmed, but the camera continues to shoot footage. An officer states that he was trying not to hurt plaintiff to the point of bleeding and states that plaintiff was winning until the officers got him under control. Junior states that she has three children and a male asks to be taken into custody instead of Junior. An officer asks Junior if she saw what happened and questions Junior about why she said she wanted to file a complaint if she did not see what happened. Junior responds that she did not see what happened from the beginning, that she was cleaning the tables inside the club, and that she only saw "three police officers on that guy." Finally, an unidentified woman tries to identify the officers that were involved in the incident. Plaintiff is not visible in Part II.

Plaintiff claims that Junior would have testified about what occurred after the alleged force was used against plaintiff, specifically that she identified herself to the defendants as a person who observed the force and that she was placed in handcuffs by Officer Marx for failing to render aid to the officers. (Pl.'s Mot. 2.) It is unclear from plaintiff's briefing precisely what Powell's testimony would have consisted of, aside from plaintiff's suggestion that Powell witnessed the post-force events involving Junior. (*Id.*) Both Junior and Powell testified and were cross-examined at trial about what they saw and heard regarding the alleged use of force against plaintiff.

Plaintiff argues that the video and the post-incident testimony of Junior and Powell were admissible for both proof of culpability and for purposes of credibility determinations. As explained below, the court finds neither argument persuasive, and holds that even if the evidence was otherwise admissible, any probative value it

4

possessed was outweighed by the dangers of unfair prejudice, confusion, and delay under FEDERAL RULE OF EVIDENCE 403.

        1.      Admissibility of evidence for purposes of determining culpability

All of the evidence plaintiff claims the court improperly excluded involved events occurring after the altercation between plaintiff and defendants. In order for plaintiff's proposed evidence to be admissible, it must be relevant. FED. R. EVID. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The Seventh Circuit has stated that when considering a charge of excessive force under the Fourth Amendment, "evidence outside the time frame of the [use of force] is irrelevant and prejudicial." *Palmquist v. Selvik,* 111 F.3d 1332, 1339 (7th Cir. 1997) (affirming exclusion of events occurring prior to shooting of suspect). This court held at trial that it could not discern the relevance of matters occurring after the alleged use of force against plaintiff, and the court does not now find that it erred in doing so.

As to Part I of the video, it is difficult for the court to ascertain any relevance of the visual image of plaintiff, handcuffed and surrounded by squad cars, to the question of the reasonableness of the force used in the incident. While the audio portion of the video may be somewhat relevant because the unidentified speakers remark on what happened during the alleged use of force, the statements made by the unidentified speakers in Part I constitute inadmissible hearsay. FED. R. EVID. 801(c).

5

The Milwaukee police department's handling of Junior following the incident with plaintiff, as plaintiff would have presented through Junior and Powell's testimony and Part II of the video, is also not relevant to defendants' culpability in this lawsuit. Further, evidence of similar wrongs is inadmissible under FEDERAL RULE OF EVIDENCE 404(b) to show conformity therewith. While evidence of other wrongs is admissible for other purposes, such as for showing motive or intent, FED. R. EVID. 404(b), the Seventh Circuit has held that in a Fourth Amendment excessive force case, "[t]he officers' intent in using force is irrelevant." *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008); *Soller v. Moore*, 84 F.3d 964, 968 (7th Cir. 1996) ("The trier of fact must look to whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation."). In sum, Junior's post-incident encounter with the police has very little relevance, if any, with regard to whether defendants used excessive force against plaintiff and is inadmissible as evidence of a similar wrong.

        2.        Admissibility of evidence for purposes of determining credibility

As to plaintiff's argument that Part I of the video is admissible for purposes of determining credibility, nothing about plaintiff sitting and standing in handcuffs surrounded by squad cars in Part I of the video has any bearing on defendants' credibility. Further, in order to entertain plaintiff's credibility argument regarding Part II of the video, the court must first assume that the unidentified officers in Part II are the same officers who were named as defendants and testified in this case; if the officers in

6

the video are not the same as the officers that testified, any credibility argument is moot. But even if the court assumes that they are the same, FEDERAL RULE OF EVIDENCE 608 prohibits plaintiff from using extrinsic evidence–such as the videotape and Junior and Powell's testimony–of specific conduct of a witness to attack the witness' credibility. Because plaintiff's proposed post-incident evidence has no bearing on defendants' credibility and constitutes inadmissible extrinsic evidence under RULE 608, plaintiff may not avoid exclusion by arguing that the evidence is admissible for purposes of determining credibility.

### 3. FEDERAL RULE OF EVIDENCE 403

Even if the court found that plaintiff's proposed evidence regarding post-incident events was relevant, non-hearsay, and otherwise admissible, FEDERAL RULE OF EVIDENCE 403 provides that the court may still exclude this evidence if its probative value is substantially outweighed by other considerations, including unfair prejudice, confusion of issues, and considerations based on delay. *Soller,* 84 F.3d at 968. In this case, the image in Part I of the video of plaintiff in handcuffs while police officers walk around him in uniforms under the flashing lights of numerous squad cars does little more than urge sympathy for plaintiff, while providing virtually no relevant information on the issues in the case. The audio portion fares no better; the danger that the jury would be confused by the statements of unidentified speakers, having been admitted without the benefit of clarifying questions or cross-examination, outweighed the relatively small amount of relevance the statements possessed.

7

Similarly, any probative value of plaintiff's proposed evidence regarding Junior's encounter with the police (Part II of the video and Junior and Powell's testimony) is outweighed by the danger of unfair prejudice, confusion of the issues, and considerations based on delay. FED. R. EVID. 403. Video footage depicting Milwaukee police officers in the process of arresting another individual is highly prejudicial in a case where the plaintiff's arrest is the central focus of the lawsuit. More concerning, though, is the fact that delving into Junior's encounter with the police would inevitably lead to an inquiry into the propriety the police officers' treatment of *Junior*, leading to a trial-within-a-trial and distracting the jury from the real issue at hand: whether defendants used excessive force against *plaintiff*. *Soller,* 84 F.3d at 968 (no abuse of discretion where trial court excluded evidence of another use of force given RULE 403 considerations, including fact that "[i]f received, the trial could have detoured into an entire replay of the [other] encounter. A trial within a trial could have resulted."). The danger of prejudice, delay, and confusion outweighed whatever probative value the evidence regarding Junior's encounter with the Milwaukee police might have had to the ultimate issues in the case.

  B. *Expert Testimony*

Plaintiff also argues that the court erred in excluding the testimony of its proferred police practices expert. More specifically, plaintiff argues that the Seventh Circuit's decisions in *Thompson v. City of Chicago,* 472 F.3d 444 (7th Cir. 2006), and *Abdullahi v. City of Madison,* 423 F.3d 763 (7th Cir. 2005), required the court to allow

plaintiff's expert, Dennis Waller, to testify as to nationally accepted standards of police conduct and the policies and procedures of the Milwaukee Police Department. (Pl.'s Mot. 4-6.)

At the outset, plaintiff's suggestion that the *Abdullahi* court ruled directly on the admissibility of expert testimony on police practices stretches an isolated sentence of the *Abdullahi* decision to its limit. In *Abdullahi,* the Seventh Circuit's discussion of the relevance of police practices evidence consists of only one sentence, and it is phrased in the hypothetical: "[T]he plaintiff's proffered expert testimony that Brook's tactics violated standard police practices, while not dispositive, may also be deemed relevant to the reasonableness inquiry, as might the plaintiff's evidence that Brooks was aware of Mohamed's mental disabilities." *Abdullahi,* 423 F.3d at 772. Accordingly, while the Seventh Circuit allowed for the possibility that expert testimony regarding police practices might be relevant, it is an overstatement to claim that the Seventh Circuit held that such evidence *was* relevant. Indeed, the court ultimately held that summary judgment was inappropriate and that the case should return to the district court for trial, *id.* at 775, at which point the district court presumably would decide this as well as other issues of admissibility.

Nonetheless, any confusion that may have been created by the *Abdullahi* opinion was seemingly put to rest by the Seventh Circuit's later decision in *Thompson,* 472 F.3d at 453-58. In *Thompson,* a Fourth Amendment excessive force case, the Seventh Circuit addressed the admissibility of the Chicago Police Department's own internal general

9

order regarding acceptable uses of force. Utilizing FEDERAL RULE OF EVIDENCE 401, which defines relevance, the court held that the district court properly excluded the general order, holding that evidence regarding local police standards "sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment" and that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson*, 472 F.3d at 454. The court further upheld the exclusion of the expert testimony of a member of the Chicago Police Department's Office of Professional Standards, as well as that of a sargent. *Id.* at 457-58. The court held that the testimony of those individuals would likely involve discussion of the department's general order, which was irrelevant, and that allowing the experts to testify would have been prejudicial under FEDERAL RULE OF EVIDENCE 403 because it would induce the jurors to substitute their independent conclusions for that of the experts. *Id.* at 458.

Curiously, plaintiff argues that *Thompson* operates in his favor and requires this court to admit the testimony of his proffered expert. Plaintiff states that "the *Thompson* Court did allow testimony from at least two police experts, who testified regarding very nearly the identical type of testimony Mr. Waller will offer." (Pl.'s Mot. 4.) However, the *Thompson* court did not "allow" the testimony of any police experts; the propriety of the testimony of the police experts who testified during the *Thompson* trial was not raised as

10

a question on appeal, and the Seventh Circuit made no ruling on the issue. The *Thompson* decision, as discussed above, only hurts plaintiff on his present motion.

In any event, *Thompson* continues to be good law in this circuit and has been adopted by numerous district courts, which have also excluded evidence regarding police practices and standards of conduct. *E.g., Legg v. Agee,* No. 05-cv-1354, 2009 WL 56876, at *5 (C.D. Ill. Jan. 6, 2009); *Longs v. Lebo,* No. 3:07-CV-83 RM, 2009 WL 799533, at *6 (N.D. Ind. Mar. 24, 2009); *Hill v. Village Of Crete,* No. 07 C 3112, 2008 WL 4559859, at *5 (N.D. Ill. Oct. 6, 2008); *Masel v. Mansavage,* No. 07-C-454, 2008 WL 5134916, at *2 (W.D. Wis. July 2, 2008); *Delgado v. Mak,* No. 06 C 3757, 2008 WL 4367458, at *6 -8 (N.D. Ill. Mar. 31, 2008). The court does not find that following recent Seventh Circuit precedent, as numerous other district courts have done, was inconsistent with substantial justice. In accordance with *Thompson*, Waller's testimony regarding national standards of police conduct and the policies and procedures of the Milwaukee police department would have been irrelevant to the issue of whether defendants used excessive force in a constitutional sense, and even if the testimony were relevant, the danger that the jury would have been prejudiced by it was too great to allow its admission. FED. R. EVID. 402, 403. Accordingly, plaintiff's motion for a new trial for the court's failure to allow the testimony of his police practices expert is denied.

C.  *Indemnification Instruction*

Plaintiff also claims that the court erred by failing to properly instruct the jury. (Pl.'s Mot. 6.) To receive a new trial based on an erroneous jury instruction, a movant

11

must show both that the instructions did not adequately state the law and that the error was prejudicial because the jury was likely to be confused or misled. *Boyd v. Ill. State Police,* 384 F.3d 888, 894 (7th Cir. 2004). An erroneous jury instruction is not prejudicial unless, considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law. *Id.*

In this case, plaintiff claims that the jury should have been instructed that the defendant-officers would have been indemnified by their employer for "any and all damages awarded to the plaintiff," and thus would not be responsible for paying any award out of their own pockets. (Pl.'s Mot. 7.) Plaintiff did not submit this instruction to the court with its proposed instructions in advance of trial, but requested the instruction at the jury instruction conference during trial after reviewing the court's proposed instructions. More specifically, plaintiff requested this instruction in response to court's instruction number 14, which read: "Defendants are being sued as individuals. Neither the Milwaukee Police Department nor the City of Milwaukee is a party to this lawsuit." Plaintiff objected to the court's instruction number 14, and asked for it to be removed or for the court to also give an instruction stating that defendants would be indemnified by their employer for any damages awarded. The court overruled plaintiff's objection and rejected plaintiff's proposed additional instruction.

The court's instruction number 14 was taken verbatim from the Seventh Circuit's civil pattern instructions for Section 1983 cases and was, in this court's opinion, entirely appropriate in this case. *See* 7TH CIR. PATTERN INSTR. 7.01 (rev. 2005). The lone
12

authority cited by plaintiff at trial for the submission of an additional indemnification instruction to the jury, *Lawson v. Trowbridge,* 153 F.3d 368, 379 (7th Cir. 1998), weighs firmly against allowing such an instruction. In *Lawson,* the Seventh Circuit noted the general rule that evidence of payments received from collateral sources is inadmissible; the court went on to hold that where one party highlights their financial circumstances, the other party should be allowed to introduce an indemnification statute to balance the playing field. *Id.* As this court held at trial, defendants did not draw attention to their financial circumstances in any way and therefore the *Lawson* exception does not apply. Accordingly, plaintiff has not demonstrated that the instructions as submitted to the jury failed to adequately state the law and his motion for a new trial for failure to properly instruct the jury is denied.

## III. CONCLUSION

For the reasons set forth above, plaintiff's motion for a new trial (DE # 103) is **DENIED**.

**SO ORDERED.**

Date: October 15, 2009

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT